UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEERTE M. FRENKEN,<br><br>    Plaintiff,<br><br>    v.<br><br>DAVID J. HUNTER, et al.,<br><br>    Defendants. | Case No. 17-cv-02667-HSG<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. Nos. 48, 49, 51 |

Pending before the Court are three motions to dismiss Plaintiff Geerte Frenken's second amended complaint, Dkt. No. 23 ("SAC"), filed by Jody Dufur Hunter and Amy Hunter, Dkt. No. 48 ("Hunter Mot."); Twitter, Inc. ("Twitter"), Dkt. No. 49 ("Twitter Mot."); and Christopher Perry Hunter ("CPH Mot."), Dkt. No. 51 (collectively, "Defendants"). Briefing on the motions is complete. *See* Dkt. Nos. 53 ("Hunter Opp."), 54 ("Hunter Reply"), 52-1 ("Twitter Opp."), 56 ("Twitter Reply"), 57 ("CPH Opp."), 62 ("CPH Reply"). The Court took the motions under submission on April 24, 2018. *See* Civ. L.R. 7-1(b). After carefully considering the parties' arguments, the Court **GRANTS** Defendants' motions.

## I. BACKGROUND

On May 9, 2017, Plaintiff, proceeding *pro se*, filed suit against her then recently deceased former husband, David Hunter ("the Decedent"), asserting claims for defamation and false invasion of privacy. *See* Dkt. No. 1.[1] Shortly after filing her initial complaint, Plaintiff amended her complaint twice, partly to account for the Decedent's passing. The operative complaint now

---

[1] David Hunter passed away on April 30, 2017. SAC ¶ m.

names the above described parties as Defendants. As they relate to the Decedent and each other, Defendant Jody Dufur Hunter is the Decedent's sister-in-law, and Defendant Christopher Perry Hunter's wife. SAC at 3. Amy Hunter is the Decedent's sister. *Id.* Christopher Perry Hunter is the Decedent's brother. *Id.* The gravamen of Plaintiff's complaint is that the Decedent sent messages through Twitter (i.e., "tweets") that disparaged Plaintiff and tarnished her personal and professional reputation. SAC at 2. As pled, the Decedent's tweets relate broadly to an underlying custody dispute involving Plaintiff, the Decedent, and Christopher Perry Hunter. SAC ¶¶ a–l; *see Frenken v. Hunter*, Case No. 4:17-cv-03125.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## III. DEFENDANTS JODY DUFUR HUNTER AND AMY HUNTER'S MOTION

The SAC names Jody Dufur Hunter ("Jody") and Amy Hunter ("Amy") in their individual

capacities "and in their capacities as Executor, Fiduciary, Grantor, Guardian, Trustees and Beneficiaries of the Estate of the Decedent." SAC at 1–2. As Jody and Amy highlight, Plaintiff fails to allege that they are liable as individuals based on their own tweets or by participating in the Decedent's tweeting. Hunter Mot. at 4. In addition, Jody and Amy highlight that they have never served as settlors, trustors, or fiduciaries for the Decedent. *Id.*

Plaintiff acknowledges both points in her opposition. Plaintiff acknowledges that Jody and Amy did not independently tweet or participate in any of the tweets set forth in the SAC, and that these parties do not serve as fiduciaries or executors for the Decedent. Hunter Opp. at 3. Considering this agreement, the Court **GRANTS** Amy and Jody's motion to dismiss. The only dispute between these parties pertains to whether the Court should dismiss Amy and Jody with prejudice. *See id.*; Hunter Reply at 2. Based on Plaintiff's admissions, the Court concludes that Plaintiff has pled herself out of a claim against these defendants. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g,* 275 F.3d 1187 (9th Cir. 2001) ("We have held that a plaintiff can—as Sprewell has done here—plead himself out of a claim by including unnecessary details contrary to his claims."). Because any amendment would be futile, the Court **DISMISSES WITHOUT LEAVE TO AMEND** the claims against Amy and Jody.

## IV. DEFENDANT TWITTER'S MOTION

In its dismissal motion, Twitter argues that it is immune from Plaintiff's suit under the Communications Decency Act ("CDA"), 47 U.S.C. § 230. Twitter Mot. at 3. Section 230(c)(1) of the CDA states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." Twitter argues that this section bars Plaintiff's claims because "(1) [it is] a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider." *See Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100–01 (9th Cir. 2009) (setting forth the elements of an immunity defense under Section 230(c)(1)).

3

Plaintiff here does not does not dispute that Twitter is a provider of an interactive computer service. *See id.* at 1102; Twitter Opp. at 4–5. Nor does Plaintiff dispute that the alleged tweets are "by another 'information content provider,'" i.e., the Decedent. *See Barnes*, 570 F.3d at 1102 & n.6 ("The statute also tells us that this term 'means any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service.'" (quoting 47 U.S.C. § 230(f)(3)).

Thus, the primary question is whether Plaintiff "seek[s] to hold Twitter liable as 'speaker' or 'publisher' of the content of Decedent's" Twitter account. Twitter Opp. at 5. The SAC's allegations compel the conclusion that she does. Plaintiff's two causes of actions are predicated entirely on allegations that Twitter allowed the Decedent to send offensive and disparaging messages at or regarding Plaintiff. *See* SAC ¶¶ h–r; *Barnes*, 570 F.3d at 1102 ("We have indicated that publication involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." (citing *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1170–71 (9th Cir. 2008) ("[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230."))). Plaintiff asserts, for instance, that "Mr. Hunter smeared Ms. Frenken in his Twitter campaign of hate, by Twitter handle @Jasmijnisfree., claiming Ms. Frenken '*hides in a foreign country*,' and '*buys heroin for addict*' . . . ." SAC ¶ k. By way of another example, Plaintiff alleges that the Decedent "consistently tweeted outrageous and deranged statements" about Plaintiff. *Id.* ¶ l. The SAC is devoid of facts suggesting that Plaintiff seeks to hold Twitter liable in any capacity <u>other</u> than as a speaker or publisher of information about Plaintiff.

Plaintiff, in her opposition, claims that Twitter violated its own rules by allowing the Decedent to send offensive and harassing tweets. Twitter Opp. at 5–6. First, Plaintiff failed to include these allegations in the SAC; thus, the Court does not consider them. Twitter Reply at 3 & 4 n.1; *Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to

4

dismiss." (emphasis in original)). Likewise, Plaintiff asserts for the first time in her opposition that Twitter violated the Violence Against Women Reauthorization Act of 2013 and the Family Violence and Prevention Services Act. *See id.*; Twitter Opp. at 7; Twitter Reply at 4 n.1. The Court cannot consider this assertion for the same reason.

Even if the Court were to consider these arguments, however, they fail. Contrary to Plaintiff's reading of *Barnes*, Twitter is not liable under a promissory estoppel theory. *See* Twitter Opp. at 6. Plaintiff fails to allege or argue that Twitter created a contract or quasi-contract with Plaintiff by specifically promising to remove or censor the Decedent's account. *Cf. Barnes*, 570 F.3d at 1107 ("In a promissory estoppel case, as in any other contract case, the duty the defendant allegedly violated springs from a contract—an enforceable promise—not from any non-contractual conduct or capacity of the defendant."). The rules upon which Plaintiff relies, i.e., Twitter's "enforcement" options for removing content or accounts, are phrased in discretionary terms. *See* Twitter Opp. at 5–6 (citing Twitter's rules, which state that Twitter "may ask someone to remove the offending Tweet before they can Tweet again," and "may suspend an account"). Put simply, the rules that Plaintiff cites do not create liability based on an estoppel theory. Rather, the SAC's statements pertain exclusively to Twitter's decision to transmit the Decedent's messages and maintain his account—activities that "necessarily involve[] treating the liable party as a publisher of the content it failed to remove." *See Barnes*, 570 F.3d at 1103 (observing that "removing content is something publishers do").

As to Plaintiff's other new statutory claims, Plaintiff fails to explain how Twitter, by maintaining the Decedent's account, violated the Violence Against Women Reauthorization Act of 2013 or the Family Violence and Prevention Services Act. *See* Twitter Opp. at 7. Plaintiff does not cite any authority to support her assertion. In addition, Twitter's CDA immunity precludes a finding of liability. The Court therefore **GRANTS** Twitter's motion to dismiss.

For the reasons articulated, the Court also concludes that Plaintiff cannot reframe or modify her allegations so as to avoid invoking the CDA's immunity provisions. Plaintiff's suit is, at bottom, predicated entirely on her now deceased ex-husband's tweeting activity. Because any allegations stemming from this theory arise from Twitter's status as a publisher of information

5

generated by the Decedent, allowing Plaintiff to further amend her complaint would be futile. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (holding that "the district court did not err when it dismissed the SAC with prejudice, since it was clear that the plaintiffs had made their best case and had been found wanting."). The Court therefore **DISMISSES WITHOUT LEAVE TO AMEND** Plaintiff's claims against Twitter.

## V. DEFENDANT CHRISTOPHER PERRY HUNTER'S MOTION

Christopher Perry Hunter ("Christopher") moves to dismiss Plaintiff's complaint on grounds similar to those discussed in Section III—namely, Plaintiff's failure fails to state any basis for Christopher's individual liability. CPH Mot. at 2. Plaintiff again acknowledges this in her opposition, stating that she does not oppose dismissing Christopher "from Plaintiff's SAC 'as an individual.'" CPH Reply at 4. Nonetheless, Plaintiff asserts in her opposition that Christopher is still "vicariously liable to Plaintiff as a successor of Decedent; and/or a joint tortfeasor with Decedent as an 'associate' or 'third party' (depending on the content of Decedent's Will)." CPH Opp. at 4–5.

Though the SAC names Christopher in his capacity as "Executor, Trustee, Fiduciary, and/or Beneficiary" of the Decedent's estate, *see* SAC at 3, the SAC lacks allegations that support finding Christopher liable in these capacities. To the extent that any allegations regarding derivative liability appear, they do so for the first time in Plaintiff's opposition. *See id.* The Court does not consider these statements for the reasons already discussed. *See Schneider*, 151 F.3d at 1197 n.1.

Even if the Court were to entertain these allegations, they fail. Plaintiff does not explain how Christopher joined in or sanctioned the Decedent's tweeting, or exercised any control over the Decedent's Twitter account. Cal. Prob. Code § 18002 ("A trustee is personally liable for torts committed in the course of administration of the trust only if the trustee is personally at fault."). Though Plaintiff alludes to *Savage v. Pac. Gas & Elec. Co.,* that case does not support Plaintiff's proposition. *See* 21 Cal. App. 4th 434, 445 (1993). In *Savage*, the court found a triable question as to whether certain corporate defendants were liable for communicating allegedly slanderous

statements about the plaintiff. *See id.* at 446–47. Here, in contrast, Plaintiff fails to allege that Christopher somehow communicated or conveyed statements about Plaintiff on behalf of the Decedent.

Because Plaintiff fails to state a claim for relief that is plausible on its face, the Court **GRANTS** Defendant Christopher Perry Hunter's dismissal motion.[2] Nonetheless, the Court cannot determine at this stage that Plaintiff "could not possibly" cure the above discussed deficiencies by alleging other facts. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quotation and citation omitted).[3] Plaintiff's claims against Christopher are therefore **DISMISSED WITH LEAVE TO AMEND**.[4] Any third amended complaint must <u>clearly, concisely and comprehensively</u> state the precise basis for Christopher's liability. Plaintiff cannot advise the Court, for instance, to review the Twitter archive for evidence of Christopher's tweeting activity. Nor can her claims survive based on their current premise: Christopher's familial relationship with the Decedent. Rather, Plaintiff must plead facts that plausibly show Christopher joined or otherwise authorized the Decedent's allegedly defamatory and harassing tweets (but only if she can do so truthfully on some plausible basis). If Plaintiff cannot correct the multiple obvious flaws in her now twice-amended complaint, the Court will dismiss Plaintiff's claims without further notice or leave to amend.

## VI. CONCLUSION

For these reasons, the Court **GRANTS** Defendants' motions, **DISMISSES WITHOUT LEAVE TO AMEND** Plaintiff's claims against Amy Dufur Hunter, Jody Hunter, and Twitter, and **DISMISSES** Plaintiff's claims against Defendant Christopher Perry Hunter **WITH LEAVE**

---

[2] Because the Court grants Defendants' motions to dismiss the SAC in its entirety, the Court **DENIES AS MOOT** Christopher's motions to strike portions of the SAC under Rule 12(f) and for a more definite statement under Rule 12(e). *See* CPH Mot. at 10–15.

[3] But for Christopher's concession that he believed that Plaintiff could cure the deficiencies in the SAC, *see* CPH Mot. at 14–15, the Court likely would not have allowed Plaintiff any further opportunity to amend given the purported basis for the allegations.

[4] Plaintiff concedes that her claims against Christopher in his "individual capacity" should be dismissed. CPH Opp. at 10. To the extent based on that theory, Plaintiff's claims are accordingly **DISMISSED WITHOUT LEAVE TO AMEND.**

**TO AMEND** in part and **WITHOUT LEAVE TO AMEND** in part, as set out above. Any third amended complaint must be filed within 21 days of the date of this Order.

**IT IS SO ORDERED.**

Dated: 4/26/2018

HAYWOOD S. GILLIAM, JR.
United States District Judge